IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

MAY 1 3 2009

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, ET AL., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. B-08-487 |
| FEDERAL EMERGENCY MANAGEMENT AGENCY, | § § § § | |
| Defendant. | § § | |

## OPINION & ORDER

BE IT REMEMBERED, that on May 13, 2009, the Court **DENIED** Defendant's Motion to Dismiss, Dkt. No. 17, and **GRANTED** Plaintiffs' Motion for a Preliminary Injunction, Dkt. No. 2

### I. Background

Plaintiffs La Union del Pueblo Entero, Noe Jimenez, Veronica Jimenez, Ernesto Lopez, Norma Lopez, Francisca Perez, Rosa Elia Villarreal, Cruz Alejandro Zamora, Francisca Adame, Alejandro Alvarado, Elizabeth Alvarado, Manuel Benavidez, Maria Galardo, Jose Gonzales, and Agustina Iglesias "are and represent individuals whose homes were damaged by Hurricane Dolly" and "seek a preliminary injunction to compel Defendant Federal Emergency Management Agency[ ("FEMA")] . . . to: (1) publicly disclose the standards that it uses to decide applications for housing repair assistance; and (2) decide these applications in an equitable and impartial manner, without using hidden internal rules that effectively *prevent* low-income families from accessing home repair assistance." Dkt. No. 2, at 1 (emphasis in original). Plaintiffs contend that "Congress not only requires FEMA to publish ascertainable standards, it requires FEMA to do so in a manner that does not discriminate based on 'economic status.'" Dkt. No. 2, at 2 (citing 42

1

U.S.C. § 5151(a)). Plaintiffs reason that Defendant FEMA's unpublished and vague rules concerning housing repair assistance "*institutionalizes* economic discrimination." *Id.* (emphasis in original).

Hurricane Dolly struck the Texas coast on July 23, 2008 and the President of the United States declared the hurricane a major disaster and made assistance available to those affected in Cameron, Hidalgo, and Willacy Counties. Dkt. No. 2, at 3; Dkt. No. 16, at 12-13. Plaintiffs applied to Defendant FEMA for housing repair assistance for damage from Hurricane Dolly; however, FEMA denied their applications. Dkt. No. 2, at 3-8. FEMA denied housing repair assistance to "some ten thousand families in all." *Id.* at 2. FEMA explained that it denied a large number applications because "[a] lot of the homes built were build from second hand materials. So the damage was, in most cases, caused from the faulty building of the house, and not the storm." *Id.* at 5 (quoting Dkt. No. 2, Ex. 1 at 9).

Plaintiffs seek relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. *Id.* at 9. Plaintiffs state that the relief sought will "minimize ongoing, irreparable harm to their families in the form of health hazards, displacement, and destruction of their property." *Id.* Plaintiffs argue that FEMA has failed to comply with its non-discretionary duties pursuant to 42 U.S.C. §§ 5151(a), 5174(j) and 44 C.F.R. § 206.117(b)(2),(c) in issuing regulations establishing eligibility requirements and then applying those requirements fairly and equitably. *Id.* at 1, 2. In response, FEMA asserts that "the actions [P]laintiffs seek are committed to FEMA's discretion." Dkt. No. 16, at 15, 20. FEMA moves for dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure as it alleges that Congress has not waived FEMA's sovereign immunity from suit. Dkt. No. 17.

## II.     Rule 12(b)(1) Dismissal

Rule 12(b)(1) allows a court to dismiss a lawsuit where the pleader proves that the court "lacks jurisdiction over the subject matter." FED. R. CIV. P. 12(b)(1). Essentially, Plaintiffs bear the burden of establishing that this Court has subject matter jurisdiction over the various claims they raised. Ramming v. U.S., 281 F.3d 158, 161 (5th Cir. 2001). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted

only if it appears certain that the plaintiff cannot prove any set of facts in support of her claim that would entitle plaintiff to relief." *Id.* (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010 (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).

### III. Sovereign Immunity

FEMA moves for dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure because FEMA claims it has sovereign immunity from suit. Dkt. No. 17. The United States government and its administrative agencies are immune from suit absent explicit and unequivocal consent from Congress. *St. Tammany Parish v. FEMA*, 556 F.3d 307, 316 (5th Cir. 2009). The plaintiff bears the burden of demonstrating that Congress unequivocally waived sovereign immunity by raising claims that are "facially outside of the discretionary function exception." *Id.* at 315.

FEMA contends that it is immune from suit on all of Plaintiffs' claims. Dkt. No. 16, at 7, 17-26. FEMA states that neither the Stafford Act nor the APA waive sovereign immunity in this case. *Id.* at 18-26. Plaintiffs argue that Congress waived sovereign immunity in this matter considering the Stafford Act, 42 U.S.C. § 5148; the APA, 5 U.S.C. § 701(a)(2); and *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004). Dkt. No. 18, at 13.

While the APA waives sovereign immunity in limited circumstances, it bars judicial review of administrative action "committed to agency discretion by law." 5 U.S.C. § 701(a)(1),(2).

> The APA is a broadly applicable statute that "undoubtedly evinces Congress' intention and understanding that judicial review should be widely available to challenge the actions of federal administrative officials." Section 702 of the APA authorizes suits against the United States through a limited waiver of sovereign immunity for "relief other than money damages" related to an agency's regulatory action. . . . However, the waiver does not apply "to the

3

extent that - (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."

*St. Tammany Parish*, 556 F.3d at 317-18 (internal citations omitted). The Stafford Act contains a discretionary function exception which bars liability for and judicial review of discretionary actions brought under the APA. *Id.* at 318. The Stafford Act states that "[t]he Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter." 42 U.S.C. § 5164.

The Fifth Circuit used the *Berkovitz* test to apply the discretionary function exception of the Stafford Act. *St. Tammany Parish*, 556 F.3d at 323. The Supreme Court in *Berkovitz v. U.S.* outlined a two-step test to determine whether an agency action falls within the discretionary function exception. 486 U.S. 531 (1988). First, the court must determine that "the action is a matter of choice for the acting employee." *Id.* at 536 (explaining that discretion requires "an element of judgment or choice" and therefore the exception cannot apply where action is prescribed). Second, if the action involved judgment, the court must assess whether the act is "of the kind that the discretionary function exception was designed to shield." *Id.* Essentially, this element is satisfied where the judgment governing the act is grounded in "social, economic, and political policy." *Id.* at 537 ("The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy."). "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *St. Tammany Parish*, 556 F.3d at 324 (quoting U.S. v. Gaubert, 499 U.S. 315, 324 (1991)).

The Fifth Circuit in *St. Tammany Parish v. FEMA* held that the regulations concerning financial assistance for removal of debris in disaster areas fell within the discretionary function exception. *St. Tammany Parish*, 556 F.3d at 324-26. The Court looked to the regulations and reasoned that as they were cast in discretionary terms, using "may" and "is authorized," FEMA had discretion to grant or deny assistance for debris

removal assistance. *Id.* at 324-25. Moreover, the Circuit Court held "that funding decisions related to the extent of debris removal that is necessary to protect improved property, public health, and safety are exactly the type of public policy considerations that [the discretionary function exception of the Stafford Act] shields from judicial scrutiny." *Id.* at 325. The Court went further and broadly stated that "[e]ligibility determinations, the distribution of limited funds, and other decisions regarding the funding of eligible projects are inherently discretionary and the exact types of policy decisions that are best left to the agencies without court interference." *Id.*

Plaintiffs argue that federal statutes require that FEMA issue regulations that include standards that outline eligibility for assistance and ensure that assistance is provided equitably and impartially. Dkt. No. 2, at 11. Three sections address the issuance of rules and regulations to assist the relief operations of the President. Section 5151, Nondiscrimination in disaster assistance, provides:

> (a) **Regulations** for equitable and impartial relief operations
> The President **shall** issue, and may alter and amend, **such regulations as may be necessary** for the guidance of personnel carrying out Federal assistance functions at the site of a major disaster or emergency. Such regulations **shall** include provisions for insuring that the distribution of supplies, the processing of applications, and other relief and assistance activities **shall** be accomplished in an equitable and impartial manner, without discrimination on the grounds of race, color, religion, nationality, sex, age, disability, English proficiency, or economic status.

42 U.S.C. § 5151 (emphasis added). Section 5174, Federal assistance to individuals and households, provides:

> (a) In general
> (1) Provision of assistance
> In accordance with this section, the President, in consultation with the Governor of a State, **may** provide financial assistance, and if necessary, direct services, to individuals and households in the State who, as a direct result of a major disaster, have necessary expenses and serious needs in cases in which the individuals and households are unable to meet such expenses or needs through other means.
> . . .
> (c) Types of housing assistance
> . . .

5

> (2) Repairs
> (A) In general
> The President *may* provide financial assistance for – (i) the repair of owner-occupied private residences, utilities, and residential infrastructure (such as a private access route) damaged by a major disaster to a safe and sanitary living or functioning condition; and (ii) eligible hazard mitigation measures that reduce the likelihood of future damage to such residences, utilities, or infrastructure.
>
> . . .
>
> (j) *Rules and Regulations*
> The President *shall prescribe rules and regulations* to carry out this section, *including criteria, standards, and procedures for determining eligibility* for assistance.

42 U.S.C. § 5174 (emphasis added). FEMA also points to § 5164, Rules and regulations, which provides that:

> The President *may prescribe such rules and regulations as may be necessary and proper* to carry out the provisions of this chapter, and *may exercise*, either directly or through such Federal agency as the President may designate, any power or authority conferred to the President by this chapter.

42 U.S.C. § 5164 (emphasis added).

When interpreting statutes, courts must look to the plain meaning of the statute and interpret it to give meaning to every word, clause, and sentence. U.S. v. Menasche, 348 U.S. 528, 538-39 (1955). Generally, "may" conveys discretion and "shall" mandates action. McMullen v. U.S., 50 Fed Cl. 718, 725 (Fed. Cl. 2001); U.S. v. Myers, 106 F.3d 936, 941 (10th Cir. 1997) ("[T]he word 'shall' in a statute 'generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive.'") (quoting Ass'n of Civilian Technicians v. Fed. Labor Relations Auth., 22 F.3d 1150, 1153 (D.C. Cir. 1994)). However, when "shall" is modified by a discretionary phrase such as "as may be necessary" or "as appropriate" an agency has some discretion when complying with the mandate. See Consumer Fed. of Am. & Pub. Citizen v. U.S. Dep't of Health & Human Servs., 83 F.3d 1497, 1503 (D.C. Cir. 1996) (indicating that where Congress in mandating administrative action modifies the word "shall" with the phrase "as appropriate" an agency has discretion to evaluate the circumstances and determine when and how to act).

In two of the three sections, Congress affords the President and thus FEMA some degree of discretion to choose to issue regulations "as may be necessary" and "proper." 42 U.S.C. §§ 5151(a) ("The President shall issue . . . such regulations as may be necessary."), 5164 ("The President may prescribe such rules and regulations as may be necessary and proper."). At most it seems that § 5151(a) requires that where the President issues regulations, those regulations shall be made to ensure that personnel carrying out the federal assistance functions shall process applications and grant relief in an equitable and impartial manner that does not discriminate against economic status. However, in § 5174, which concerns "Federal assistance to individuals and households," subsection (j) mandates the issuance of regulations that articulate the "criteria, standards, and procedures for determining eligibility for assistance." 42 U.S.C. § 5174(j). Clearly the mandate to issue rules and regulations found in § 5174(j), which unlike the other provisions, does not contain discretionary phrasing and therefore does not fall within the discretionary function exception of the Stafford Act.

FEMA has issued regulations concerning the issues addressed in the federal statutes Plaintiffs mention. There are regulations prohibiting unlawful discrimination, explaining eligibility factors, and defining terms. 44 C.F.R. §§ 206.11(b) (prohibiting unlawful discrimination), 206.133 (outlining eligibility factors), 206.111 (defining terms used in the section concerning eligibility factors). The issue that seemingly remains is whether Congress afforded the President and by extension FEMA discretion in drafting the regulations which articulate the "criteria, standards, and procedures for determining eligibility for assistance." Id.

FEMA seems to concede that § 5151(a) requires that FEMA issue regulations; however, it contends that the regulations it has already issued satisfy this mandate to grant assistance equitably and impartially. Dkt. No. 16, at 25 (citing 44 C.F.R. § 206.11(b) ("Nondiscrimination in disaster assistance. . . . All personnel carrying out Federal major disaster or emergency assistance functions . . . shall perform their work in an equitable and impartial manner, without discrimination on the grounds of race, color, religion, nationality, sex, age, or economic status.")). However, Plaintiffs contend that the regulations issued are insufficient as they are "parroting regulations" that "merely paraphrase that statutory

language" and fail to address the gaps left in the statutory text. Dkt. No. 2, at 13-14. Plaintiffs state that "FEMA leaves critical questions completely unaddressed in *any* published policy statement, including what magnitude, severity, and immediacy of health risk qualifies a repair for 'safety' purposes." Dkt. No. 2, at 14 (emphasis in original). FEMA contends that the regulations as well its guides and memoranda for applicants ensures assistance is granted equitably and fairly, articulates eligibility requirements, and explains assistance is not guaranteed. Dkt. No. 16, at 13.

FEMA issued regulations concerning eligibility for assistance and defining terms used when determining eligibility. Regulation 44 C.F.R. § 206.113, Eligibility factors, provides

> (a) Conditions of eligibility. In general, FEMA may provide assistance to individuals and households who qualify for such assistance under section 408 of the Stafford Act and this subpart. FEMA may only provide assistance:
> (1) When the individual or household has incurred a disaster-related necessary expense or **serious need** in the state in which the disaster has been declared. . . .
> . . .
> (b) Conditions of ineligibility. We **may not** provide assistance under this subpart:
> . . .
> (5) For housing assistance, for improvements or additions to the pre-disaster condition of property, except those required to comply with local and State ordinances or eligible mitigation measures.

44 C.F.R. § 206.113 (emphasis added). Regulation 44 C.F.R. § 206.117 provides

> (a) Purpose. FEMA may provide financial or direct assistance under this section to respond to the disaster-related housing needs of individuals and households.
> (b) Types of housing assistance –
> . . .
> (2) Repairs
> (i) FEMA may provide financial assistance for the repairs of uninsured disaster-related damages to an owner's primary residence. The funds are to help return owner-occupied primary residences to a **safe and sanitary living or functioning condition**. . . .
> (ii) The type of repair FEMA authorizes may vary depending upon the nature of the disaster. . . .
> . . .

> (c) Eligible costs
> (1) Repairs to the primary residence or replacement of items must be disaster-related and must be of average quality, size, and capacity, taking into consideration the needs of the occupant. Repairs to the primary residence are limited to **restoration of the dwelling to a safe and sanitary living or functioning condition**.

44 C.F.R. § 206.117 (emphasis added). The regulations also include a section of definitions, which state that:

> Functional means an item or home capable of being used for its intended purpose.
> . . .
> Safe means secure from disaster-related hazards or threats to occupants.
> Sanitary means free of disaster-related health hazards.
> Serious need means the requirement of an item, or service, that is essential to an applicant's ability to prevent, mitigate, or overcome a disaster-related hardship, injury or adverse condition.

44 C.F.R. § 206.111.

"[C]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." Chevron U.S.A., Inc. v. Nat'l Resources Defense Council, Inc., 467 U.S. 836, 844 (1984).

> "The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

*Id.* at 843-44 (internal citations omitted).

FEMA also outlines eligibility requirements in a Guide, "Help After a Disaster: Applicant's Guide to the Individuals & Households Program, FEMA 545 / July 2008," given to every applicant. Dkt. No. 16, at 12-13; Dkt. No. 16, Ex. 1 at 9-11 (requiring for eligibility that the applicant is "not able to live in [her] home now, [she] cannot get to [her] home due to the disaster, or [her] home requires repairs because of damage from the disaster" or that the applicant has "necessary expenses or serious needs because of the disaster"). The

9

Guide explains that FEMA "only covers repairs . . . or items that are damaged as a direct result of the disaster." Dkt. No. 16, Ex. 1 at 10. The Guide also states that the notation "IID – Ineligible – Insufficient Damage" indicates that the inspector determined that the "disaster had not caused the applicant's home to be unsafe to live in." *Id.* at 25.

Essentially, Plaintiffs challenge the conformance of FEMA's regulations with the congressional mandates. While the Court agrees with Plaintiffs that Congress mandated that regulations be issued regarding eligibility standards and that therefore the act of issuing regulations does not fall within the discretionary function exception, Congress also granted FEMA discretion to determine the content and the specificity of the regulations. *Compare* 42 U.S.C. § 5174(j) (mandating the issuance of regulations generally without including specific requirements as to the quality or specificity of those requirements), *with* 42 U.S.C. §§ 5151(a) (permitting FEMA to issue regulations regarding discrimination "as may be necessary"), 5164 (permitting FEMA to issue regulations concerning relief assistance "as may be necessary and proper").

Applying the first step of the *Berkovitz* test, the Court determines that § 5151(a) and § 5164 grant FEMA discretion to issue regulations concerning discrimination and general relief provisions when FEMA determines that they are "necessary and proper" and essentially allow FEMA to determine the content of the regulations FEMA issues. *See Berkovitz*, 486 U.S. at 536. Considering the second step, the Court concludes that the regulations concerning discrimination and relief clearly involve decisions based on "social, economic, and political policy." *See id.* at 536-37. Therefore, the Court holds that FEMA has sovereign immunity from suit to the extent Plaintiffs challenge whether FEMA has issued sufficient regulations under § 5151(a) and § 5164.

Section 5174(j) does not contain the same discretionary language Congress used in § 5151(a) and § 5164. Therefore, this Court reasons that unlike § 5151(a) and § 5164, Congress mandated in § 5174(j) that the President, and therefore FEMA, issue regulations stating the criteria and standards by which eligibility will be measured. Implicitly in that general mandate, Congress granted FEMA discretion to determine the content and specificity of the eligibility requirements. However, this Court agrees with Plaintiffs that the regulations concerning eligibility FEMA has issued duplicate and fail to supplement the

federal statutes. Gonzalez v. Oregon, 546 U.S. 243, 257 (2006) (indicating that a regulation essentially copies a federal statute where it repeats, summarizes, or paraphrases statutory text and offers no further instruction). See 44 C.F.R. §§ 206.113 (outlining eligibility requirements as they were outlined by Congress, which requires for home assistance that the uninsured damage was caused by the disaster), 206.111 (providing a definition section using commonly used, general meanings for language used in the federal statutes and the regulations, i.e., "[f]unctional means an item or home capable of being used for its intended purpose" and "[s]anitary means free of disaster-related health hazards").

The congressional mandate to issue regulations concerning eligibility standards necessitates that FEMA's regulations include further criteria and standards of eligibility beyond those identified by federal law. See 42 U.S.C. § 5174(j) ("The President shall prescribe . . . standards . . . for determining eligibility for assistance."). For, to hold otherwise would strip § 5174(j) of all effect. See Haas v. Peake, 525 F.3d 1168, 1186 (Fed. Cir. 2008) (explaining that an administrative agency is not afforded *Chrevron* deference for interpreting its own regulation that parrots the federal text because courts do not interpret the parroting regulation but rather interpret the language from the federal statute). Congress, in requiring that the President issue regulations outlining eligibility, indicates that the federal statutory text insufficiently outlines eligibility and therefore it is necessary that FEMA issue regulations providing detailed criteria and standards. Thus, to the extent Plaintiffs challenge FEMA's failure to comply with this congressional mandate, FEMA may not use sovereign immunity to shield itself from suit.

### III. Preliminary Injunction

A court has considerable discretion to grant preliminary injunction as an extraordinary and drastic remedy where the movant clearly persuades the Court that it is appropriate. Wright, et al., 11A FEDERAL PRACTICE & PROCEDURE § 2948 (West). The movant must satisfy a conjunctive four-part test: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction

might cause the defendant; and (4) that the injunction will not disserve the public interest." Ridgley v. FEMA, 512 F.3d 727, 734 (5th Cir. 2008).

Plaintiffs assert that they are entitled to a preliminary injunction as they are likely to succeed on the merits of their claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq.; they will suffer irreparable harm without the relief; the benefit of the relief outweighs the burden; and the injunction is in the public interest. Dkt. No. 2, at 8-22. Aside from arguing that sovereign immunity bars suit, FEMA also asserts that Plaintiffs have not demonstrated that they would suffer irreparable injury if this Court failed to grant a preliminary injunction and if this Court granted relief, FEMA and the public interest would be harmed as resources would be diverted from relief efforts. Dkt. No. 16, at 26-28.

In their Complaint, Plaintiffs seek injunctive relief "to minimize ongoing irreparable harm to their families in the form of health hazards, displacement, and destruction of their property." Dkt. No. 1, at 2. In the Prayer for relief, Plaintiffs request that this Court order that FEMA publish ascertainable standards for determining eligibility for housing repair assistance, reconsider those applications previously denied, and provide applicants timely and adequate notice of its actions concerning applications. Id. at 29. Plaintiffs contend that as FEMA's policy of "deferred maintenance" is vague and unascertainable it does not comply with the congressional mandate. Dkt. No. 2, at 11. Generally, an administrative agency must publish ascertainable standards by which conformance and eligibility may be measured. See G.E. Co. v. EPA, 53 F.3d 1324, 1329 (D.C. Cir. 1995) (explaining that administrative agencies are required to provide notice of the ascertainable standards used to evaluate compliance with regulations). "'[W]hile there must be definiteness and ascertainable standards so that men of common intelligence can apprehend the meaning of the ordinance, perfect precision is neither possible nor constitutionally required.'" Am. Trucking Ass'n, Inc. v. Larson, 683 F.2d 787, 801 (3d Cir. 1982) (holding that the federal statute and accompanying regulations did not lack an ascertainable standard) (quoting Bykofsky v. Boro. of Middletown, 401 F. Supp. 1242, 1253 (M.D. Pa. 1975)).

As discussed above, FEMA has failed to comply with the congressional mandate that it issue regulations outlining the criteria and standards for eligibility. Therefore, this Court finds that Plaintiffs have demonstrative a substantial likelihood of success on the

merits. However, the Court's holding is not intended to challenge the quality of FEMA's deferred maintenance policy but merely to reiterate the congressional requirement that FEMA issue ascertainable eligibility standards and criteria. FEMA's deferred maintenance policy uses a standard derived from federal law, which requires that to be eligible for assistance the damage incurred must have been caused by the disaster and not the poor construction or poor maintenance of the home. See 42 U.S.C. §§ 5174(a)(1) (requiring that the necessary expense of serious need be a "***direct result***" of a major disaster), (b)(1) (requiring that for housing assistance individuals or households have a "***disaster-related***" need); 44 C.F.R. §§ 206.113(a)(1) (limiting assistance where there is a "***disaster-related***" need), 206.117(a) (same), 206.177(b)(2)(i) (***returning*** residences to safe, sanitary, and functioning conditions), 206.177(c)(1) (same).

Plaintiffs in this case allege that they will continue to suffer irreparable injuries as a result of not receiving relief assistance from FEMA. However, household assistance is not guaranteed to Plaintiffs even if FEMA more clearly outlines its standards and criteria for eligibility. Case law concerning the redressability issue of standing to bring suit addresses this issue. Basically, "Plaintiffs need not demonstrate that there is a 'guarantee' that their injuries will be redressed by a favorable decision. In fact, . . . [P]laintiffs 'must show only that a favorable decision is *likely* to redress [their injuries], not that a favorable decision *will inevitably* redress [their injuries]." Graham v. FEMA, 149 F.3d 997, 1003 (9th Cir. 1998) (concerning standing requirements) (emphasis in original) (quoting Beno v. Shalala, 30 F.3d 1057, 1065 (9th Cir. 1994)). Similarly, where the process of awarding relief is challenged and not only the denial of relief, the applicants suffer injuries that may be alleviated by correcting the process. See Ridgely v. FEMA, No. 07-2146, slip op., 2007 WL 1728724, at *4 (E.D. La. June 13, 2007) (unpublished), *reversed on other grounds*.

As evidence of the harm suffered and the irreparable injuries that will continue, Plaintiffs provide multiple affidavits that allege risk of physical injury, displacement, and unrecoverable costs. Plaintiff Francisca Adame alleges that Hurricane Dolly damaged her roof and parts of her ceiling are now rotting; however, FEMA denied her assistance because damage to her home was not caused by the hurricane but the result of poor maintenance prior to the hurricane. Dkt. No. 2, Ex. 1 at 21, 46. Plaintiff Manuel Benavides

13

asserts that his roof was damaged by Hurricane Dolly and that FEMA denied him benefits because it alleged that the damage was caused by deferred maintenance and not the hurricane. Dkt. No. 2, Ex. 1 at 24, 44. Plaintiff Maria Gallardo states that Hurricane Dolly damaged her roof causing her ceilings, walls, and carpet to rot which rendered her home unsafe to live in and caused her daughter and grandchildren to move out because of mold and mildew exposure; however, FEMA denied her repair assistance because the damage was insufficient. Dkt. No. 2, Ex. 1 at 26. Plaintiff Jose Gonzalez, a quadriplegic, alleges that his home was structurally damaged by Hurricane Dolly, but FEMA refused to award repair assistance because the damage was caused by deferred maintenance not the hurricane. Dkt. No. 2, Ex. 1 at 29. Plaintiff Veronica Jimenez contends that FEMA has denied her assistance for extensive damage she asserts was caused by Hurricane Dolly because FEMA considers the damage to be insufficient. Dkt. No. 2, Ex. 1 at 31. Plaintiff Ernesto Lopez states that Hurricane Dolly rendered his home unlivable and caused the family to develop respiratory problems; however, FEMA denied him assistance because the damage was insufficient to quality for assistance. Dkt. No. 2, Ex. 1 at 33. FEMA denied Plaintiff Francisca Perez assistance for structural and plumbing damage to her home because the damage was insufficient although she asserts that waste overflows into the hold and mold and mildew have caused her asthmatic daughter to go to the hospital. Dkt. No. 2, Ex. 1 at 35-36. FEMA also denied Plaintiff Cruz Alejandro Zamora assistance for damage to his roof, walls, and foundation he alleged was caused by Hurricane Dolly. Dkt. No. 2, Ex. 1 at 38-39.

Given the injuries alleged by Plaintiffs and their challenge of the eligibility regulations, the Court concludes that they have met their burden as to the second element for a preliminary injunction. The Court finds that if FEMA were to outline more specific criteria and standards for eligibility, decisions made by FEMA implementing eligibility requirements could increase the relief awards granted to some or many of the Plaintiffs, which would alleviate their injuries.

Concerning the remaining elements for a preliminary injunction, FEMA asserts that if this Court were to order it to draft new regulations that would result "a multi-step federal rule-making process that ordinarily requires a significant amount of time." Dkt. No. 16, at

26. FEMA also states that an order requiring that it issue regulations would undermine its ability to use its discretion in allocating resources. *Id.* at 28 ("FEMA must be free, and remain free, to administer its resources without judicial interference."). This Court finds that reasoning unpersuasive. This Court shall not find that requiring FEMA to comply with its congressional mandate would disserve the public interest or that the harm to FEMA outweighs the benefit to those injured. Plaintiffs have met their burden as to the last two elements as the burden of issuing the mandated regulations does not outweigh the benefit and it is in the public interest that FEMA issue ascertainable standards by which eligibility is determined.

## III.   Conclusion

WHEREFORE, the Court **GRANTS** Plaintiffs' Motion for a Preliminary Injunction, Dkt. No. 2, and **DENIES** Defendant's Motion to Dismiss, Dkt. No. 17. FEMA shall issue Rules and Regulations that outline definite and ascertainable criteria, standards, and procedures for determining eligibility for relief assistance beyond which is identified by federal law in compliance with the congressional mandate found in 42 U.S.C. § 5174(j).

DONE at Brownsville, Texas, on May 13, 2009.

Hilda G. Tagle
United States District Judge